No. 24-2982

## THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

NORMA CISNEROS,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellant*,

v.

NUANCE COMMUNICATIONS, INC.,

*Defendant-Appellee.*
_____

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division,
No: 1:21-cv-04285
Honorable Judge John J. Tharp, Jr.

## BRIEF OF DEFENDANT-APPELLEE
## NUANCE COMMUNICATIONS, INC.

Lindsay C. Harrison
Sophia W. Montgomery
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
(202) 639-6000

Andrianna D. Kastanek
*Counsel of Record*
David C. Layden
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
akastanek@jenner.com

*Attorneys for Defendant-Appellee*

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No. <u>24-2982</u>

Short Caption: <u>Norma Cisneros v. Nuance Communications, Inc.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[X]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Nuance Communications, Inc</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

<u>Jenner & Block LLP</u>

(3)        If the party or amicus is a corporation:

i)        Identify all of its parent corporations, if any; and
<u>Nuance is a wholly owned subsidiary of Microsoft Corporation</u>

ii)        list any publicly held company that owns 10% or more of the party's or amicus' stock:
<u>Microsoft Corporation</u>

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases: <u>N/A</u>

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:  <u>N/A</u>

Attorney's Signature  <u>s/ Andrianna D. Kastanek</u>        Date: <u>July 7, 2025 (new)</u>

Attorney's Printed Name: <u>Andrianna D. Kastanek</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).        **Yes**    X

**No**  _____

Address:    <u>353 North Clark Street, Chicago, IL 60654</u>

Phone Number: <u>(312) 840-7285</u>        Fax Number:  <u>(312) 527-0484</u>

E-Mail Address: <u>akastanek@jenner.com</u>

<u>CIRCUIT RULE 26.1 DISCLOSURE STATEMENT</u>

Appellate Court No. 24-2982

Short Caption:   Norma Cisneros v. Nuance Communications, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[X]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Nuance Communications, Inc.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

Jenner & Block LLP

(3)          If the party or amicus is a corporation:

i)          Identify all of its parent corporations, if any; and
  Nuance is a wholly owned subsidiary of Microsoft Corporation

ii)          list any publicly held company that owns 10% or more of the party's or amicus' stock:
  Microsoft Corporation

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases: <u>N/A</u>

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:  <u>N/A</u>

Attorney's Signature   <u>s/ David C. Layden</u>                    Date: <u>July 7, 2025    (new)</u>

Attorney's Printed Name:  David C. Layden

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).          **Yes**

                                                                                                          **No**          X

Address:     353 North Clark Street, Chicago, IL 60654

Phone Number:  (312) 923-2796                    Fax Number:    (312) 527-0484

E-Mail Address:  dlayden@jenner.com

rev. 12/19 AK

<u>CIRCUIT RULE 26.1 DISCLOSURE STATEMENT</u>

Appellate Court No. <u>24-2982</u>

Short Caption: <u>Norma Cisneros v. Nuance Communications, Inc.</u>

      To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

      The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[X]**   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    <u>Nuance Communications, Inc.</u>

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

    <u>Jenner & Block LLP</u>

(3)         If the party or amicus is a corporation:

    i)       Identify all of its parent corporations, if any; and
       <u>Nuance is a wholly owned subsidiary of Microsoft Corporation</u>

    ii)      list any publicly held company that owns 10% or more of the party's or amicus' stock:
       <u>Microsoft Corporation</u>

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases: <u>N/A</u>

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:  <u>N/A</u>

Attorney's Signature  <u>s/ Lindsay C. Harrison</u>      Date: <u>July 7, 2025 (new)</u>

Attorney's Printed Name: <u>Lindsay C. Harrison</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** _____

                                        **No**    <u>X</u>

Address:  <u>1099 New York Avenue NW, Suite 900 Washington DC 20001</u>

Phone Number: <u>(202) 639-6865</u>        Fax Number:  <u>(202) 639-6066</u>

E-Mail Address: <u>lharrison@jenner.com</u>

                                                rev. 12/19 AK

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No. 24-2982

Short Caption: Norma Cisneros v. Nuance Communications, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[X]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Nuance Communications, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency) or are expected to appear for the party in this court:

Jenner & Block LLP

(3)        If the party or amicus is a corporation:

i)        Identify all of its parent corporations, if any; and
          Nuance is a wholly owned subsidiary of Microsoft Corporation

ii)       list any publicly held company that owns 10% or more of the party's or amicus' stock:
          Microsoft Corporation

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases: N/A

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:  N/A

Attorney's Signature   s/ Sophia W. Montgomery          Date: July 7, 2025 (new)

Attorney's Printed Name:  Sophia W. Montgomery

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).                        **Yes**

                                            **No**        X

Address:   1099 New York Avenue NW, Suite 900 Washington DC 20001

Phone Number:  (202) 639-3866                    Fax Number:  (202) 639-6066

E-Mail Address:  smontgomery@jenner.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... vi

INTRODUCTION .......................................................................................... 1

JURISDICTIONAL STATEMENT ............................................................... 2

ISSUES PRESENTED .................................................................................. 4

STATEMENT OF THE CASE ....................................................................... 4

STANDARD OF REVIEW ........................................................................... 13

SUMMARY OF THE ARGUMENT ............................................................ 14

ARGUMENT ............................................................................................... 17

I.     The District Court Properly Held that the GLBA Exemption in BIPA Bars Plaintiff's BIPA Claims Against Nuance. ................................. 17

        A.    Nuance Did Not Waive Its GLBA Exemption Arguments and, in Any Event, Plaintiff Waived Any Waiver ............................... 17

        B.    Taking Plaintiff's Allegations as True, Nuance Is Exempt from BIPA under the GLBA Exemption When It Supplies Voice Authentication Software to Schwab. ...................................... 21

                1.    The Federal Reserve Board Has Determined that Authentication Activities Are So Closely Related to Banking as to Be a Proper Incident Thereto. ............................ 22

                2.    Under the Federal Reserve Board's Determination, the Authentication Activities Plaintiff Claims Nuance Engages in for Schwab Are Financial Activities. ...................... 25

                3.    Plaintiff's Arguments Lack Merit. ............................... 27

        C.    The GLBA Exemption Is Not an Affirmative Defense, and in Any Event, the Amended Complaint Confirms Its Applicability. ......... 31

II.    The Court Should Affirm Dismissal on the Alternative and Additional Ground that Plaintiff's Theory Impermissibly Seeks to Impose BIPA's Privacy Regulations on Schwab. ................................................. 36

CONCLUSION ............................................................................................ 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States,*
406 U.S. 128 (1972) ................................................................. 28

*American Bar Ass'n v. FTC,*
430 F.3d 457 (D.C. Cir. 2005) ............................................ 29, 30

*Arobelidze v. Holder,*
653 F.3d 513 (7th Cir. 2011) ..................................................... 32

*Bailey v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths,*
*Forgers & Helpers, Local 374,*
175 F.3d 526 (7th Cir. 1999) ..................................................... 18

*Bew v. City of Chicago,*
252 F.3d 891 (7th Cir. 2001) ..................................................... 19

*Bryant v. Compass Grp. USA, Inc.,*
958 F.3d 617 (7th Cir.), *as amended on denial of reh'g and reh'g en*
*banc* (7th Cir. June 30, 2020) ................................................ 5–6

*Clover v. Total Sys. Servs., Inc.,*
176 F.3d 1346 (11th Cir. 1999) .................................................. 38

*Davis v. Jumio Corp.,*
No. 22-cv-00776, 2023 WL 2019048 (N.D. Ill. Feb. 14, 2023) ...... 34, 35

*Deravin v. Kerik,*
335 F.3d 195 (2d Cir. 2003) ....................................................... 37

*Deyerler v. HireVue, Inc.,*
No. 22 CV 1284, 2024 WL 774833 (N.D. Ill. Feb. 26, 2024) .......... 34, 35

*Doe v. Northwestern Univ.,*
586 F. Supp. 3d 841 (N.D. Ill. 2022) .......................................... 22

*Duerr v. Bradley Univ.,*
590 F. Supp. 3d 1160 (C.D. Ill. 2022) ......................................... 22

*Glisson v. Ind. Dep't of Corr.,*
813 F.3d 662 (7th Cir. 2016), *reh'g en banc granted, opinion vacated*
(May 24, 2016), *on reh'g en banc,* 849 F.3d 372 (7th Cir. 2017) ......... 18–19

vi

*In re Hernandez*,
    918 F.3d 563 (7th Cir. 2019) ................................ 33

*Jones v. City of Elkhart*,
    737 F.3d 1107 (7th Cir. 2013) ............................... 19

*Jute v. Hamilton Sundstrand Corp.*,
    420 F.3d 166 (2d Cir. 2005) ................................. 38

*Kratville v. Runyon*,
    90 F.3d 195 (7th Cir. 1996) .......................... 19, 32

*Lekas v. Briley*,
    405 F.3d 602 (7th Cir. 2005) ................................ 32

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ............................................ 29

*McGoveran v. Amazon Web Services, Inc.*,
    No. 20-cv-01399, 2023 WL 2683553 (D. Del. Mar. 29, 2023) ........ 11, 12, 23, 24, 25

*Nat'l Shopmen Pension Fund v. DISA Indus., Inc.*,
    653 F.3d 573 (7th Cir. 2011) ................................ 13

*Oneida Nation v. Village of Hobart*,
    968 F.3d 664 (7th Cir. 2020) ................................ 36

*Patco Constr. Co., Inc. v. People's United Bank*,
    684 F.3d 197 (1st Cir. 2012) ................................ 24

*Patterson v. Respondus, Inc.*,
    593 F. Supp. 3d 783 (N.D. Ill. 2022) .................. 34, 35

*People v. Casler*,
    2020 IL 125117 ................................................ 37

*People v. Finkenbinder*,
    2011 IL App (2d) 100901 ..................................... 33

*People v. Foster*,
    195 Ill. App. 3d 926 (5th Dist. 1990) ...................... 33

*People v. Fredericks*,
    2014 IL App (1st) 122122 .................................... 37

*Powell v. DePaul Univ.*,
    No. 21 C 3001, 2022 WL 16715887 (N.D. Ill. Nov. 4, 2022) ................. 22

*RCBA Nutraceuticals, LLC v. ProAmpac Holdings, Inc.,*
108 F.4th 997 (7th Cir.), *reh'g denied,* No. 23-3171, 2024 WL
3970734 (7th Cir. Aug. 28, 2024) ................................................... 31–32

*Ryan v. Bd. of Trs. of Gen. Assembly Ret. Sys.,*
236 Ill. 2d 315 (2010) ...................................................................... 36

*Trans Union LLC v. FTC,*
295 F.3d 42 (D.C. Cir. 2002) ............................................................ 23

*United States v. Lewis,*
411 F.3d 838 (7th Cir. 2005) ....................................................... 34–35

*United States v. Lewis,*
797 F.2d 358 (7th Cir. 1986) ............................................................ 37

*United States v. Pridgette,*
831 F.3d 1253 (9th Cir. 2016) .......................................................... 20

*United States v. Wanjiku,*
919 F.3d 472 (7th Cir. 2019) ............................................................ 19

*Yee v. City of Escondido,*
503 U.S. 519 (1992) .......................................................................... 19

*Zahn v. N. Am. Power & Gas, LLC,*
815 F.3d 1082 (7th Cir.), *certified question answered,* 2016 IL
120526 ............................................................................................... 33

**Statutes**

740 ILCS 14/1 *et seq.* ........................................................................... 1

740 ILCS 14/10 ............................................................................... 6, 21

740 ILCS 14/15 ..................................................................................... 5

740 ILCS 14/15(a) ............................................................................. 6, 8

740 ILCS 14/15(b) ............................................................... 6, 8, 21, 37

740 ILCS 14/25(c) ........................................................................*passim*

740 ILCS 14/25(d) ............................................................................. 37

805 ILCS 5/7.75(d) ............................................................................ 33

12 U.S.C. § 1843 ........................................................................... 31

12 U.S.C. § 1843(k)(4) ........................................................... 25, 36

12 U.S.C. § 1843(k)(4)(A) ............................................................ 7

12 U.S.C. § 1843(k)(4)(F) ................................................. 7, 14, 22

15 U.S.C. § 6802 ......................................................................... 24

15 U.S.C. § 6809(3) ....................................................................... 7

15 U.S.C. § 6809(3)(A) ......................................................... *passim*

15 U.S.C. § 6809(3)(B)–(D) ....................................................... 30

28 U.S.C. § 1291 ........................................................................... 3

28 U.S.C. § 1332(d)(2) .................................................................. 3

28 U.S.C. § 1441(a) ...................................................................... 3

28 U.S.C. § 1446 ........................................................................... 3

28 U.S.C. § 1453(b) ...................................................................... 3

**Other Authorities**

12 C.F.R. § 225.28(b)(2)(viii) (2001) ....................................... 29

12 C.F.R. § 225.28(b)(6)(vi) (2001) .......................................... 29

12 C.F.R. § 225.86 ..................................................................... 31

12 C.F.R. § 1016.1(a) ................................................................ 22

12 C.F.R. § 1016.1(b)(1) ...................................................... 22, 23

12 C.F.R. § 1016.3(*l*)(3)(i) ....................................................... 23

*How to Comply with the Privacy of Consumer Financial Information
Rule of the Gramm-Leach-Bliley Act*, Fed. Trade Comm'n (July
2002), https://www.ftc.gov/system/files/documents/plain-
language/bus67-how-comply-privacy-consumer-financial-
information-rule-gramm-leach-bliley-act.pdf ........................................ 29

*Orders Issued Under Section 4 of the Bank Holding Company Act*, 86 Fed. Res. Bull. 56 (Jan. 2000) (available at 2000 WL 49269) .. 7, 14, 23, 26

**INTRODUCTION**

The district court properly granted Defendant Nuance Communications, Inc.'s motion to dismiss Plaintiff Norma Cisneros's amended complaint.

Plaintiff seeks to hold Nuance liable under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, for providing voice authentication software to Charles Schwab. But as the district court correctly held, Plaintiff's claims are barred by BIPA's broad Gramm-Leach-Bliley Act of 1999 ("GLBA") exemption, which provides that BIPA shall not be applied "in any manner" to a financial institution or an affiliate subject to Title V of the GLBA and the rules promulgated thereunder. *See* 740 ILCS 14/25(c). This exemption bars BIPA claims against Nuance on Plaintiff's alleged facts for two independently sufficient reasons.

*First*, taking Plaintiff's allegations as true, Nuance is exempt from BIPA's requirements when, as Plaintiff claims here, Nuance engages in voice authentication activity related to financial transactions.[1] Plaintiff alleges that Schwab, a securities broker and therefore a financial institution, uses Nuance's voice authentication software to authenticate the identity of Schwab customers who opt into Schwab's "voice ID" feature. She further alleges that, when Schwab uses the software, both Nuance and Schwab collect and store Schwab customers' unique "voiceprints." In other words, according to Plaintiff, Nuance collects and retains customer data in the

---

[1] For purposes of this appeal, Nuance treats the factual allegations in the amended complaint as true. Those allegations state that Nuance itself is capturing, collecting, and possessing biometric data. In actuality, Nuance licenses software to Schwab that Schwab uses to authenticate callers. Nuance does not capture, collect, or possess Schwab customers' biometric data when Schwab uses Nuance software.

course of providing authentication services to Schwab for purposes closely related to and incident to banking—namely, customer account verification. Under the GLBA's relevant definitions, this activity qualifies Nuance as a financial institution for purposes of BIPA's GLBA exemption.

*Second*, the Court should affirm dismissal for the separate and independent reason that Plaintiff's claims effectively seek to impose BIPA's substantive requirements on Schwab, which the parties agree is a GLBA financial institution exempt from BIPA. Plaintiff attempts to circumvent the GLBA exemption by naming only Nuance as a defendant. But her theory of liability requires *Schwab* to act—by disclosing to its customers that Nuance was allegedly capturing and storing their biometric data when they used Schwab's voice ID feature, or by linking to Nuance's privacy statement on *Schwab's* website. Because BIPA may not be applied "in any manner" to a financial institution, whether directly or indirectly, Plaintiff's efforts to impose BIPA's requirements on Schwab by suing Nuance cannot stand. This separately requires dismissal of Plaintiff's claims.

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant's jurisdictional statement is not complete and correct.

On May 12, 2021, Plaintiff filed a putative class action complaint against Nuance in the Circuit Court of Cook County, Illinois, Chancery Division, captioned *Cisneros v. Nuance Communications, Inc.,* No. 2021-CH-02337. SA4–25.[2] Plaintiff

---

[2] Nuance cites the electronic record on appeal as "R." followed by document and page number. Citations to "Op. Br._" are to Plaintiff's opening brief. Citations to "SA_" are to the appendix attached to Plaintiff's opening brief.

served Nuance on July 12, 2021. SA67. Within 30 days of service, on August 11, 2021, Nuance properly removed the case to federal court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2), 1441(a), 1446, 1453(b). *See* SA67–74. Removal was proper under CAFA: The proposed class consists of at least 100 members; there is diversity between Nuance and at least one class member; and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See id.*; SA79, 95 ¶¶ 19, 114. Nuance is a citizen of Delaware, where it is incorporated, and of Massachusetts, where it has its principal place of business. SA70; SA75 ¶ 2. Plaintiff is a citizen of Illinois. SA75 ¶ 1.

On October 4, 2024, the district court issued an Order dismissing Plaintiff's first amended complaint with prejudice. SA160–64. The district court entered final judgment on the same day. R. 40. Plaintiff timely filed a notice of appeal on October 31, 2024. R. 41.

The district court had jurisdiction under 28 U.S.C. § 1332(d)(2). This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Did the district court properly dismiss Plaintiff's BIPA claims on the ground that, taking Plaintiff's allegations as true, Nuance is exempt from BIPA liability under the GLBA exemption where it allegedly engages in voice authentication activity related to financial transactions?

2. Should this Court affirm on the alternative ground that Plaintiff effectively seeks to apply BIPA's requirements to Schwab, a financial institution exempt from BIPA?

## STATEMENT OF THE CASE

Because this appeal arises from the district court's dismissal of Plaintiff's amended complaint on the pleadings, the following facts as alleged by Plaintiff are taken as true for purposes of this appeal:

### Schwab's Voice ID Feature

Schwab is a securities broker-dealer that offers its customers a "voice ID" feature. SA81 ¶ 34. A customer who opts into the feature may bypass security questions in accessing her Schwab accounts and instead authenticate her identity using her unique voice. SA81–82 ¶¶ 34–35, 37. The feature is not mandatory, and no customer must enroll in it. *See id.* ¶ 34. Instead, customers are offered the feature and voluntarily choose whether to participate. *Id.* For a customer who chooses to participate, she must state when calling Schwab: "At Schwab, my voice is my password." SA82, 85 ¶¶ 37, 63. This statement is then compared to a voiceprint previously provided by the customer to authenticate the customer and allow the customer to access the account. *Id.*

Schwab discloses to its customers that its voice ID feature involves the collection, use, and storage of voice data. SA82 ¶ 36. For instance, as Plaintiff

acknowledges in her complaint, Schwab states (among other things) that "Schwab is introducing a new voice ID service that uses voice biometrics technology to identify you by your unique voice"; "just like your fingerprint, your voiceprint is uniquely yours"; and "we store a digital representation of your voice using a proprietary algorithm." *Id.* ¶¶ 35, 36. In 2017, Plaintiff enrolled in Schwab's voice ID service, *id.* ¶ 38, thereby consenting to Schwab's use of her voiceprint to identify her.

Nuance, which specializes in voice authentication and other voice software, provides to Schwab the software necessary for Schwab to offer voice ID to Schwab customers. SA85 ¶¶ 61–62; *see* SA81, 85 ¶¶ 33, 60. Plaintiff says that when Schwab uses the software, it and Nuance both allegedly capture voiceprints from Schwab's customers who opt into the voice ID feature. SA78 ¶ 16. (In actuality, though not alleged by Plaintiff, Nuance does not itself capture, collect, or retain the voiceprints.) When a customer calls Schwab and recites the sentence "At Schwab, my voice is my password," Schwab uses the Nuance voice-authentication software to verify that the customer is, in fact, who she says she is by comparing her voice to a stored "voiceprint." SA81–82, 85 ¶¶ 33–37, 60–63.

### Illinois's BIPA Statute

Illinois's BIPA statute regulates the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information in Illinois. *See* 740 ILCS 14/15. The Illinois legislature enacted it "to ensure that consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained." *Bryant v. Compass*

*Grp. USA, Inc.*, 958 F.3d 617, 619 (7th Cir.), *as amended on denial of reh'g and reh'g en banc* (7th Cir. June 30, 2020).

Two obligations imposed by BIPA are relevant here:

- Section 15(a) requires a company in possession of biometric data to develop and comply with a public-facing written policy for retention of that data. The policy must provide for the data's destruction "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

- Section 15(b) requires a company to provide written notice and obtain a written release before collecting, capturing, purchasing, or otherwise obtaining a person's biometric data. *Id*. 14/15(b).

Biometric data, for purposes of BIPA, includes a "voiceprint." 740 ILCS 14/10.

The statute, however, contains an express—and broad—exemption for financial institutions. Section 25(c) states that BIPA does not "apply *in any manner* to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal [GLBA] of 1999 and the rules promulgated thereunder." 740 ILCS 14/25(c) (emphasis added). The expansive scope of Section 25(c) stands in stark contrast to exemptions found in Sections 25(b) and (d), which apply only if there is direct "conflict" between BIPA and another statute and then only as to specific provisions of BIPA that create such conflict. In contrast to (b) and (d), the GLBA exemption in Section 25(c) requires no conflict but instead provides that BIPA cannot be applied, "in any manner," to any financial institution subject to the GLBA.

The GLBA, in turn, defines a "financial institution" subject to Title V as "any institution the business of which is engaging in financial activities as described in [12

U.S.C. §] 1843(k)." 15 U.S.C. § 6809(3). The cross-referenced provision in § 1843(k) provides that "[a]ctivities that are financial in nature" include not only traditional banking activities like "[l]ending, exchanging, transferring, investing for others, or safeguarding money or securities," 12 U.S.C. § 1843(k)(4)(A), but also

> [e]ngaging in any activity that the [Federal Reserve] Board has determined, by order or regulation that is in effect on November 12, 1999 [the date the GLBA was enacted], to be so closely related to banking or managing or controlling banks as to be a proper incident thereto (subject to the same terms and conditions contained in such order or regulation, unless modified by the Board).

*Id*. § 1843(k)(4)(F). As discussed further below, as of November 12, 1999, the Board had determined that "authenticating the identity of customers conducting financial . . . transactions [is an] activit[y] that [is] closely related to banking" "as to be a proper incident [there]to." *Orders Issued Under Section 4 of the Bank Holding Company Act*, 86 Fed. Res. Bull. 56, 59, 61 (Jan. 2000) (available at 2000 WL 49269) (citing 12 U.S.C. § 1843(c)(8), which employs the same standard as § 1843(k)(4)).

Plaintiff concedes that Schwab is a "financial institution" subject to the GLBA. *See* SA121. This appeal raises the question whether the GLBA exemption in BIPA also applies to a company like Nuance when, as here, the plaintiff seeks to hold that company liable under BIPA for providing voice authentication software to a financial institution for that institution to use to authenticate the identity of customers conducting financial transactions—an activity the Federal Reserve Board has determined is closely related and a "proper incident" to banking.

### *Procedural Background*

#### *Plaintiff's Complaint*

In 2021, Plaintiff—a Schwab customer who voluntarily enrolled in the voice ID feature in 2017, *see* SA81, 82 ¶¶ 33, 38—filed this action under BIPA. SA4–25. Several months later, she amended her complaint.[3] SA75–97.

In the first amended complaint, Plaintiff, on behalf of a putative class, alleges that Nuance, but not Schwab, violated Sections 15(a) and (b) of BIPA, 740 ILCS 14/15(a), (b), by allegedly capturing voiceprints of Schwab's customers and collecting and retaining the voiceprints in a database without providing a "retention schedule and guidelines" for destruction and without obtaining informed consent. SA78 ¶¶ 16–17. Plaintiff claims that she "would not have provided her biometric data to Charles Schwab if she had known that Nuance would retain such information for an indefinite period of time without her consent." SA84 ¶ 57.

Plaintiff alleges that "Nuance does not require its clients [here, Schwab] to acknowledge that Nuance is capturing and storing this sensitive biometric information when a user uses one of Nuance's products on the client's website." SA88 ¶ 76. Instead, Plaintiff claims, Schwab allegedly interacts with its customers without disclosing Nuance's alleged role and without "link[ing] to the Nuance privacy statement such that any disclosures made there are known to [Schwab]'s customers." *Id*. ¶ 77.

---

[3] The first amended complaint is materially identical to the original complaint for purposes of analyzing the GLBA exemption.

Under Plaintiff's interpretation of BIPA, then, Schwab must take steps to comply with BIPA for its software provider, Nuance, to avoid a claim from her for alleged statutory violations. As Plaintiff recommends when she alleges that Schwab should "link to the Nuance privacy statement such that any disclosures made there are known to [Schwab]'s customers," SA88 ¶ 77, Schwab could comply with BIPA by making BIPA disclosures about Nuance when interacting with customers. Alternatively, Schwab would have to put Nuance in contact with Schwab's customers by providing Nuance with information about Schwab's customers—a disclosure that other federal laws may prohibit—so that Nuance could obtain executed written releases from those customers before they could first use Schwab's voice ID to access their accounts. SA78, 82–83, 88, 90 ¶¶ 18, 42–47, 77, 85–89.

Plaintiff seeks actual and statutory damages and injunctive relief, SA79 ¶ 19; SA95–96, and to certify a class of "Illinois residents who had his or her biometric identifiers of biometric information captured, collected, stored, or otherwise obtained by Nuance during the applicable statutory period," SA90 ¶ 90.

### *Nuance's Motion to Dismiss and Motion for Leave to Supplement*

Nuance moved to dismiss Plaintiff's amended complaint under Federal Rule of Civil Procedure 12(b)(6).[4] SA98–114. Nuance first argued that BIPA's GLBA exemption barred Plaintiff's claims. Schwab is indisputably a "financial institution" regulated under the GLBA. SA104–05. And although Plaintiff did not expressly name

---

[4] Nuance also moved to dismiss Plaintiff's original complaint; the district court denied Nuance's motion as moot when Plaintiff filed her amended complaint. R. 10, 11, 15.

Schwab as a defendant, her claims effectively sought to apply BIPA to Schwab's conduct: For Nuance to comply with BIPA, Plaintiff explained, it would be necessary for Schwab—who was using Nuance's software to "interact with" its own customers—to make BIPA disclosures to Schwab's customers. SA106–08.

Under Plaintiff's own theory of the case, then, the only alternative for Schwab, if it wished to avoid Nuance being sued by Plaintiff, would be for Schwab to permit Nuance to interact directly with Schwab's customers. But that, too, would involve applying BIPA to Schwab because it would entail Schwab taking action—either to consent to and facilitate Nuance's contact with Schwab's customers or to forgo use of Nuance's voice-authentication software. SA107 (quoting *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 533 (1st Cir. 2007) (where bank was exempt from liability due to preemption under the National Banking Act, it would be "contrary to the language and intent of the [Act] to allow states to avoid preemption of their statutes simply by enacting laws that prohibited non-bank firms from providing national banks with the resources to carry out their banking activities")).

Nuance offered two additional, alternative bases for dismissal: (i) that Plaintiff failed to plead sufficient facts to plausibly allege any BIPA claims against Nuance, and (ii) that Plaintiff failed to plausibly allege that any BIPA violations occurred in Illinois, so the statute could not be applied extraterritorially to Nuance.[5] SA108–113.

---

[5] Nuance is a Delaware corporation, with a principal place of business in Burlington, Massachusetts. Plaintiff did not allege that Nuance has any facility in Illinois, or that Nuance received or processed any data relating to Plaintiff's voice in Illinois, or that she called a Schwab call center located in Illinois, or that Schwab operates Nuance's

While the motion to dismiss the amended complaint was pending, Nuance sought leave to submit supplemental authority in support of dismissal. SA146–58; R. 36. In its motion, Nuance drew the district court's attention to the newly issued opinion in *McGoveran v. Amazon Web Services, Inc.*, No. 20-cv-01399, 2023 WL 2683553 (D. Del. Mar. 29, 2023), in which Judge Stephanos Bibas of the Third Circuit, sitting by designation in the district court for the District of Delaware, dismissed under the GLBA exemption BIPA claims against Pindrop Security, Inc., who, like Nuance, was providing voice authentication software to a financial institution. *See* SA146–58.

In *McGoveran*, Pindrop allegedly provided voice-authentication software to John Hancock, a financial-services company—just as Nuance is alleged to have done here for Schwab. Finding the BIPA claims to be barred by the GLBA exemption, Judge Bibas explained that the GLBA defines a financial institution to include a company engaged in activity the Federal Reserve Board has determined to be "closely related to banking" and thus "incident" thereto; that the Board had made that finding as to a company that authenticates the identity of a financial institution's customers; and that BIPA incorporates the GLBA's definition for purposes of its financial-institution exemption. 2023 WL 2683553, at *6-8 (SA154–56) (citing 12 U.S.C. § 1843(k)(4)(F); 86 Fed. Res. Bull. 56, 57). Thus, the court in *McGoveran* concluded,

---

software on a server in Illinois, or that any data processing done by that software occurs in Illinois. *See generally* SA75–97.

BIPA claims against Pindrop related to its alleged provision of voice-authentication software to John Hancock's banking customers were foreclosed by Section 25(c). *Id.*

The district court granted Nuance's motion for leave to file the supplemental authority, SA159, while declining Nuance's offer to further brief the issues presented by the ruling in *McGoveran*, R. 29 (reasoning that "the case procedure on supplemental authority should suffice"). However, the court gave Plaintiff an opportunity to respond, within six days, to *McGoveran* and to Nuance's assertion that *McGoveran* supported the application of Section 25(c) here to Nuance. SA159. Plaintiff did not file a response.

### The District Court's Dismissal Order

In an order dated October 4, 2024, the district court dismissed the amended complaint under the GLBA exemption in Section 25(c) of BIPA. SA160–64.

The court disagreed with Nuance's primary argument that Plaintiff impermissibly sought to indirectly regulate Schwab's conduct as a financial institution. SA161–62. But the court concurred with Judge Bibas's analysis in *McGoveran*. The district court here, like Judge Bibas, held that BIPA borrows from the GLBA's definition of "financial institution," and that the GLBA—via its statutory cross-reference to 12 U.S.C. § 1843(k)—applies to "any activity that the [Federal Reserve] Board has determined, by order or regulation that is in effect on November 12, 1999, to be so closely related to banking or managing or controlling banks as to be a proper incident thereto." SA162–63 (citing *McGoveran*, 2023 WL 2683553, at *5–7 (SA153–54)). As of November 10, 1999, the district court explained, the Federal

Reserve Board had determined that "authenticating the identity of customers conducting financial and nonfinancial transactions are activities closely related to banking." SA163 (citing 86 Fed. Res. Bull. at 59; 12 C.F.R. § 225.86(a)(2)(iii)).

The district court, taking Plaintiff's allegations about Nuance's role of providing authentication software to Schwab as true, held that Nuance qualifies as a GLBA financial institution and is exempt from BIPA when it captures, collects, and retains biometric data for purposes of authenticating a financial institution's customer's identity, as Plaintiff alleges Nuance does. SA163–64. Because Plaintiff already once amended her complaint in response to Nuance's first motion to dismiss, and because the court rightly found that further "amendment would be futile," the district court dismissed the first amended complaint with prejudice. SA164. The court did not address Nuance's alternative arguments for dismissal.[6]

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's decision to dismiss a plaintiff's complaint, along with issues of statutory interpretation such as the scope of Section 25(c)'s GLBA exemption. *Nat'l Shopmen Pension Fund v. DISA Indus., Inc.*, 653 F.3d 573, 578 (7th Cir. 2011).

---

[6] If this Court holds the GLBA exemption inapplicable, Nuance respectfully requests that the Court instruct the district court to address on remand the alternative grounds for dismissal in Nuance's motion to dismiss, including that Plaintiff has not plausibly alleged that Nuance has violated BIPA and that any such violation did not occur primarily and substantially in Illinois. *See* SA108–113.

## SUMMARY OF THE ARGUMENT

The Court should affirm dismissal of the amended complaint for two independent and sufficient reasons: (1) the GLBA exemption in BIPA applies to Nuance here, where Plaintiff seeks to hold it liable for providing authentication services to a financial institution for purposes closely related to and properly incident to banking; and (2) Plaintiff's theory of liability rests on Schwab's compliance with BIPA, which plainly cannot apply to Schwab.

*First,* the district court properly held that BIPA's GLBA exemption applies to Plaintiff's BIPA claims against Nuance. BIPA states clearly that it does not apply "in any manner" to any financial institution or affiliate "subject to Title V of the federal [GLBA] and the rules promulgated thereunder." 740 ILCS 14/25(c). The GLBA, in turn, defines "financial institution" as "any institution the business of which is engaging in financial activities as described in [12 U.S.C. §] 1843(k)." 15 U.S.C. § 6809(3)(A). And 12 U.S.C. § 1843(k)(4)(F) describes "financial activities" as including any activity the Federal Reserve Board, as of the time of the GLBA's enactment, determined "to be so closely related to banking or managing or controlling banks as to be a proper incident thereto." *Id*. In an order that took effect on November 10, 1999 (two days prior to the GLBA's enactment), the Federal Reserve Board determined in the context of a non-bank subsidiary that providing authentication services for banks is so "closely related" to banking as to be "a proper incident thereto." 86 Fed. Res. Bull. at 59.

In other words, per the Federal Reserve Board and thus controlling of the "financial institution" definition under the GLBA, a company that engages in authentication services for banking is exempt from BIPA even where that conduct is alleged to involve the capture, collection, and retention of biometric data to authenticate the identity of a financial institution's customers. Under Plaintiff's allegations, Nuance does exactly that. Plaintiff alleges that Nuance provides software that Schwab uses to authenticate the identity of customers conducting financial transactions. Plaintiff alleges that Nuance captures, collects, and retains voiceprints in the course of that voice authentication. Plaintiff's allegations, taken as true, plead her out of court: If Nuance does the things Plaintiff says it does, it is providing authentication services that are closely related to and a "proper incident" to banking. Nuance is therefore a GLBA financial institution and exempt from BIPA.

Contrary to Plaintiff's argument, the GLBA exemption is not an affirmative defense and can and should be applied at the pleading stage. As an initial matter, Plaintiff waived this argument by failing to raise it in response to Nuance's motion to dismiss. In any event, the exemption is a statutory carve out, which Illinois courts do not treat as an affirmative defense. The title of the exemption reflects this. The title is captioned "Construction," showing that the Illinois General Assembly intended the section to guide courts' interpretation of BIPA's scope, rather than to set forth an affirmative defense. And even if an affirmative defense, the GLBA exemption is apparent on the face of the pleadings and requires no factual development, so dismissal under Rule 12(b)(6) is appropriate: Plaintiff alleges that "Nuance

provides . . . Schwab[] with the means to achieve identity verification of [Schwab's] customers through biometric authentication." SA85 ¶ 60. This theory is clearly foreclosed by BIPA, which may not be applied "in any manner" to "a financial institution." 740 ILCS 14/25(c). Nuance's "biometric authentication" software, as provided to Schwab to "achieve identity verification" before a customer can access Schwab's services and the customer's account(s), is exactly what bars BIPA's application to Nuance. SA85 ¶ 60.

*Second*, even if the district court somehow erred in its statutory analysis—and it did not—this Court should affirm the district court's dismissal of the amended complaint on the alternative and additional ground that Plaintiff impermissibly seeks to apply BIPA to Schwab via Nuance. As Schwab is indisputably a financial institution, BIPA's substantive requirements, restrictions, and prohibitions may not be applied "in any manner" to it. 740 ILCS 14/25(c). Yet Plaintiff's theory of the case— that *Schwab* does not disclose to its customers that Nuance allegedly captures and stores Schwab's customers' data when they use Schwab's voice ID, SA88 ¶ 76; that *Schwab* does not link to Nuance's privacy statement, *id.* ¶ 77; and that Plaintiff "would not have provided her biometric data" to *Schwab* had she known of Nuance's alleged role, SA84 ¶ 57—would result in exactly that. If Schwab wishes for its software provider to avoid Plaintiff's BIPA claims, Schwab would need to make BIPA disclosures and obtain consent on behalf of Nuance—or Nuance would need to interact with Schwab's customers, with Schwab's assent and facilitated by Schwab, to make those BIPA disclosures and obtain consent. This is fundamentally

incompatible with the Illinois General Assembly's intent to broadly exempt financial institutions from liability under BIPA *in any manner*—directly or indirectly—and requires affirming the district court's dismissal.

## ARGUMENT

### I. The District Court Properly Held that the GLBA Exemption in BIPA Bars Plaintiff's BIPA Claims Against Nuance.

The district court correctly interpreted the GLBA exemption in BIPA to require dismissal of BIPA claims against Nuance. Plaintiff premises her BIPA claims on Nuance providing software to a financial institution for the financial institution to authenticate the identity of customers conducting financial transactions. Plaintiff plainly alleges that Nuance captures, collects, and retains biometric data in the course of providing voice authentication services to Schwab to enable Schwab's customers to access their Schwab accounts. When Nuance provides these services to Schwab and under Plaintiff's facts taken as true, the GLBA exemption applies to Nuance, barring Plaintiff's claims.

#### A. Nuance Did Not Waive Its GLBA Exemption Arguments and, in Any Event, Plaintiff Waived Any Waiver.

As an initial matter, Plaintiff is incorrect that Nuance waived the GLBA argument on which the district court granted dismissal. Op. Br. 9–13. There was no waiver, and in any event, Plaintiff waived her waiver argument.[7]

---

[7] Indeed, Plaintiff also arguably waived her ability to challenge the district court's holding that Section 25(c) bars her claims against Nuance by failing to respond to Nuance's submission of *McGoveran* as supplemental authority when the district court gave her the opportunity to do so. *See* SA164.

*First*, Nuance unambiguously and repeatedly invoked the GLBA exemption below. *See* R. 11, 28; SA98–115, 146–58. To be sure, Nuance focused its motion to dismiss on Schwab's role as a financial institution, and on Plaintiff's theory requiring Schwab, as the entity whose consumers would be required to receive BIPA disclosures and provide releases under BIPA, to comply with BIPA's requirements. SA106–10. But even "a skeletal argument below" may be "fleshed out and emphasized on appeal" where it is clear that the lower court recognized and considered the issue, *Bailey v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, Local 374*, 175 F.3d 526, 529–30 (7th Cir. 1999), and here, Nuance supplemented its motion to dismiss with the *McGoveran* decision that ultimately formed the basis of the district court's reasoning, *see* SA146–58.

*Second*, the district court did not "*sua sponte*" dismiss on grounds of the GLBA exemption, as Plaintiff claims. Op. Br. 11. In its motion filed in the district court prior to dismissal, Nuance argued that, like Pindrop in *McGoveran*, "Nuance provided biometric voice authentication services" and qualifies as a "'financial institution' regulated under [the GLBA]" when it does so. SA147 (citation omitted). Indeed, this Court has suggested that a party should do exactly what Nuance did: To preserve an argument based on a new case, a party should file the case as supplemental authority in the district court. *See Glisson v. Ind. Dep't of Corr.*, 813 F.3d 662, 668 (7th Cir. 2016) ("Appellant could have offered [a recent related district court decision] as supplemental authority for her argument before the district court. But she failed to do so, and has thus waived any argument relating to [that decision]."), *reh'g en banc*

*granted, opinion vacated* (May 24, 2016), *on reh'g en banc*, 849 F.3d 372 (7th Cir. 2017).

*Third*, this Court routinely reviews "new arguments related to preserved claims" and "new twist[s] on [old] argument[s] based upon additional authority." *United States v. Wanjiku*, 919 F.3d 472, 486 (7th Cir. 2019) (citation omitted). Here, the *claim* was that the GLBA exemption bars Plaintiff's BIPA theory of liability. Even if the *argument* based on *McGoveran* was new, this Court should address it because it "supports [the] claim made before the district court"—that BIPA liability is foreclosed by the exemption. *Bew v. City of Chicago*, 252 F.3d 891, 895–96 (7th Cir. 2001); *Yee v. City of Escondido*, 503 U.S. 519, 534–35 (1992).

Contrary to Plaintiff's argument, nothing is unfair about this Court reaching the merits of the GLBA exemption ground on which the district court based its dismissal order. Nuance's motion fairly put Plaintiff on notice of that theory, as did the district court's order allowing Plaintiff to respond to Nuance's invocation of *McGoveran*—an opportunity Plaintiff gave up by not responding. Under these facts, no more was needed. *See Jones v. City of Elkhart*, 737 F.3d 1107, 1116–17 (7th Cir. 2013) (argument not waived where it was not raised in initial briefing, but the court provided the parties an opportunity to address it).

In any event, Plaintiff waived any argument of waiver. It is well established that a party must assert waiver in the district court in order to preserve it for appeal, and that failure to do so results in waiver of the waiver. *See Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996) (finding waiver of waiver where party did "not assert[ ]

the argument before the district court in the current litigation"). For example, in the analogous context of court-ordered supplemental briefing, a party who fails in her supplemental brief to assert waiver based on the other party's untimely argument waives the waiver. *See, e.g.*, *United States v. Pridgette*, 831 F.3d 1253, 1258–59 (9th Cir. 2016).

That logic holds here: At no point during the district court proceedings, including in response to Nuance's motion for leave to submit supplemental authority, did Plaintiff suggest that Nuance was precluded from arguing that it is a financial institution. Nuance's motion stated unambiguously that it was asking the district court to hold that the GLBA exemption protects Nuance when, like Pindrop, it allegedly engages in authenticating the identity of customers conducting financial transactions. The district court took that authority under advisement and set a deadline for a response by Plaintiff. SA159. Plaintiff elected not to respond, whether on the merits or to argue that Nuance had waived the argument by not raising it at an earlier time.[8] *See* SA162 n.3. Plaintiff's failure to do so should preclude this Court from finding waiver.

---

[8] Plaintiff argues that the district court's procedures were inadequate to constitute an opportunity to respond because they did not allow her to make a legal argument. Op. Br. 11–13. But Plaintiff's own filings under the district court's supplemental-authority procedures bely this assertion. In response to a different motion by Nuance for leave to file supplemental authority, for example, Plaintiff responded and made a substantive argument that the supplemental authority in question was factually distinct. R. 38. Plaintiff also herself filed supplemental authority with the district court while the motion to dismiss was pending, in which she requested that the court take notice of out-of-circuit cases and made legal arguments about why those cases supported denial of Nuance's motion to dismiss. R. 24.

**B. Taking Plaintiff's Allegations as True, Nuance Is Exempt from BIPA under the GLBA Exemption When It Supplies Voice Authentication Software to Schwab.**

Among BIPA's numerous exemptions—including for government entities, government contractors, companies that capture biometrics in healthcare settings, and courts and judges in Illinois—the broadest is the one that applies to financial institutions. The text of Section 25(c) could not be clearer: "Nothing in this Act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal [GLBA] of 1999 and the rules promulgated thereunder." 740 ILCS 14/25(c). In other words, any financial institution regulated by the GLBA is exempt from BIPA's requirements.

While the Illinois General Assembly did not explicitly state its reasoning, a broad exemption for GLBA-covered institutions makes perfect sense. BIPA's drafters were mindful of potential conflicts between BIPA and federal statutes. The drafters, for instance, took care to accommodate potential conflicts with federal laws like HIPAA. *See* 740 ILCS 14/10, *id*. 14/25(b). It did the same for the GLBA: BIPA's exemption of all GLBA-defined financial institutions is a logical result of the legislature's evident aim to avoid subjecting entities already governed by comprehensive federal schemes to additional and potentially conflicting state-law requirements, and to avoid potential conflict with federal statutory objectives.

Nuance qualifies for the broad GLBA exemption under Plaintiff's alleged facts because Plaintiff seeks to hold Nuance liable for providing software to a financial institution to facilitate its provision of financial services.

1. **The Federal Reserve Board Has Determined that Authentication Activities Are So Closely Related to Banking as to Be a Proper Incident Thereto.**

With Plaintiff's alleged facts taken as true, Nuance is a GLBA financial institution when providing authentication software to Schwab under § 1843(k)'s incorporation of the Federal Reserve Board's determination that authentication activities are financial in nature and thus regulated under the statute when provided to financial institutions.

Under the GLBA, a "financial institution" is "any institution the business of which is engaging in financial activities as described in [12 U.S.C. §] 1843(k)." 15 U.S.C. § 6809(3)(A). Section 1843(k), in turn, describes activities that extend well beyond traditional banking to include various activities that support financial operations.[9] Per that section, "[a]ctivities that are financial in nature" encompass those that the Federal Reserve Board has determined are "so closely related to banking . . . as to be a proper incident thereto."[10] 12 U.S.C. § 1843(k)(4)(F).

---

[9] Courts have thus applied the GLBA exemption to a variety of institutions engaged in financial activities that extend beyond traditional banking. For example, district courts within this Circuit routinely treat universities as "financial institutions" for purposes of BIPA's GLBA exemption. *See, e.g.*, *Doe v. Northwestern Univ.*, 586 F. Supp. 3d 841, 843–44 (N.D. Ill. 2022) (granting motion to dismiss because university, which participated in federal financial aid programs, including engaging in the lending of funds, was a financial institution); *Duerr v. Bradley Univ.*, 590 F. Supp. 3d 1160, 1171 (C.D. Ill. 2022) (same); *Powell v. DePaul Univ.*, No. 21 C 3001, 2022 WL 16715887, at *1 (N.D. Ill. Nov. 4, 2022) (same).

[10] Regulation P, 12 C.F.R. § 1016.1(a), (b)(1), promulgated under the GLBA, mirrors the statute's incorporation of the definition of financial activities under 12 U.S.C. § 1843(k)(4). *See* 740 ILCS 14/25(c) (BIPA exempting not only companies that are subject to the GLBA but also those subject to "the rules promulgated []under [the GLBA]"). That regulation states that it "applies to any financial institution" "subject to [the GLBA]"—which, the regulation clarifies, means any "financial institution" the

"Put together," as Judge Bibas explained in *McGoveran*, if Nuance can "show . . . a Federal Reserve determination" concluding that its activities are "so closely related to banking . . . as to be a proper incident" thereto, "then (1) those activities are financial under § 1843(k), (2) [Nuance] is a financial institution subjected to [GLBA], and (3) it is thus exempted under [BIPA]." *McGoveran*, 2023 WL 2683553, at *6 (SA154) (citation omitted); *accord Trans Union LLC v. FTC*, 295 F.3d 42, 48–49 (D.C. Cir. 2002) (applying same analysis to find credit bureau to be a "financial institution" under the GLBA).

The Federal Reserve Board has recognized that authentication activities are so closely related to banking as to be a proper incident thereto, even though they are not themselves banking. Specifically, in an order that took effect on November 10, 1999, the Board determined that "authenticating the identity of customers conducting financial . . . transactions [is an] activit[y] that [is] closely related to banking," such that it is a "proper incident" thereto under section 4(c)(8) of the Bank Holding Company Act. 86 Fed. Res. Bull. at 59, 61. The Board issued this order in the context of bank holding companies requesting the Board's approval to retain voting interest in a nonbank technology joint venture called Identrus, LLC, and to use Identrus and other nonbanks for authentication services. *Id.* at 56–58. In determining that identity authentication in connection with financial transactions is closely related to banking, such that the applicants could engage in authentication activities

_____

"business" of which is "engaging in financial activities" described in § 1843(k). 12 C.F.R. § 1016.1(b)(1), *id*. 1016.3(*l*)(3)(i).

through nonbank entities, the Board recognized that "identity authentication services are an integral part of many traditional banking functions." *Id*. at 59.

If this determination by the Federal Reserve Board was reasonable in 1999, it is compelled by today's environment. Authentication is an essential component of modern financial operations; providers of authentication software have become part of the critical infrastructure that enables the entire financial system to function. Without reliable authentication, financial institutions cannot safely conduct their core business. *See, e.g.*, *Patco Constr. Co., Inc. v. People's United Bank*, 684 F.3d 197, 201–02 (1st Cir. 2012). Authentication is also integral to a financial institution's risk management. The GLBA requires financial institutions to protect the confidentiality and security of nonpublic personal information, *see* 15 U.S.C. § 6802; but they cannot do so without authentication software that ensures only authorized individuals can access accounts and financial information.

Congress and the Illinois General Assembly crafted the GLBA and BIPA, respectively, in a manner that protects these authentication activities. When Congress enacted the GLBA on November 12, 1999, it did so against the backdrop of the Federal Reserve Board's November 10, 1999 order finding that authentication services are closely related and a proper incident to banking. And against that backdrop, Congress chose to explicitly apply the GLBA to "any institution" engaging in activity deemed closely related to banking by the Federal Reserve prior to the GLBA's enactment, whether a bank, bank-holding company, or a company like Nuance who is alleged to engage in authentication activities. *See* 15 U.S.C.

§ 6809(3)(A); 12 U.S.C. § 1843(k)(4); *see also McGoveran*, 2023 WL 2683553, at *6 (SA154). And when the Illinois General Assembly enacted BIPA, it exempted GLBA financial institutions from BIPA's reach—which makes sense given that BIPA's requirements and private right of action may have the effect of *discouraging* precisely the kinds of confidentiality- and security-promoting practices, like sophisticated authentication protocols, that the GLBA incentivizes financial institutions to employ.

> **2.     Under the Federal Reserve Board's Determination, the Authentication Activities Plaintiff Claims Nuance Engages in for Schwab Are Financial Activities.**

This analysis compels the conclusion that Plaintiff has pled herself out of a BIPA claim. If Plaintiff's alleged facts were true, Nuance would qualify as a financial institution under the GLBA when it provides authentication software to Schwab.

Specifically, the amended complaint alleges that Nuance "is an [AI] company that accomplishes individual identification through biometric authentication," including through "Active Voice" and "Passive Voice." SA76 ¶¶ 6–7. The amended complaint further alleges that Schwab "utilizes Nuance's technology and programs for Schwab's identification verification through biometric authentication" through Schwab's "voice ID" offering, "which allows its customers to authenticate themselves by using their voice" when they call Schwab. SA81–82 ¶¶ 33–37. And Schwab's voice ID website, which the amended complaint incorporates, explains that Schwab "provides a full range of brokerage, banking and financial advisory services," and that

the voice ID feature facilitates its customers accessing their financial accounts.[11] SA82 ¶ 35 & n.9 (citing https://www.schwab.com/voice-id).

Indeed, because Plaintiff alleges that both Nuance and Schwab handle the very same alleged biometric data in the context of the very same customer interaction, it would make no sense to exempt Schwab but not Nuance. Plaintiff alleges that when a customer who has opted into voice ID calls Schwab, Schwab uses Nuance's voice-authentication software to verify for Schwab's purposes that the customer is in fact who she says she is by comparing her voice to a stored alleged "voiceprint." SA82 ¶¶ 36, 39. Both Nuance and Schwab, according to Plaintiff, collect and store clients' voiceprints as part of this process. *Id.* ¶ 35 & n.9. If true, this would make Nuance and Schwab, with respect to Plaintiff's alleged voiceprint and the voice-authentication process in general, inextricable. And, given that interrelationship, the inescapable conclusion is that Nuance should have the same BIPA protections as Schwab.

In short, Plaintiff alleges that Nuance engages in "authenticating the identity of customers conducting financial . . . transactions." 86 Fed. Res. Bull. at 59. If it does as Plaintiff says, Nuance is engaged in "financial activities" within the ambit of

---

[11] This does not mean that Nuance is a GLBA financial institution for all purposes, of course, which is beyond the question presented on appeal. In fact, Plaintiff is incorrect that Nuance itself captures, collects, and possesses voiceprints as part of its authentication services. Nuance instead *licenses* authentication software to Schwab, who conducts these activities. In that scenario, Nuance is neither a financial institution under the GLBA nor subject to BIPA.

Because this case is before this Court on the pleadings, however, the only question here is whether Plaintiff's allegations about Nuance's conduct exempt Nuance from BIPA. And they do.

§ 1843(k), which makes it a "financial institution" subject to the GLBA and exempt from BIPA when providing authentication software to Schwab.

### 3. Plaintiff's Arguments Lack Merit.

Plaintiff does not contest that BIPA borrows the GLBA's definition of "financial institutions," nor that the GLBA in turn looks to § 1843(k) and the orders and regulations of the Federal Reserve. She instead advances three main counterarguments, none persuasive.

*First*, Plaintiff argues that Nuance is not an "institution" "subject to" the GLBA at all—and so purportedly cannot be a "financial institution" for purposes of either the GLBA or BIPA. To the extent Plaintiff is saying that despite Nuance engaging in financial activities as defined by § 1843(k) here, Nuance is not "subject to" the GLBA when it is providing these services, that is wrong. Nuance is not arguing that it falls under GLBA in all instances for all purposes and for all customers, including customers who are not financial institutions. But the GLBA is plain that "any" "financial institution," as defined for purposes of that Act, is "subject to" it. *See* 15 U.S.C. § 6809(3)(A). And the only courts who have addressed this issue have rightly agreed that when a software provider provides voice authentication software to a financial institution for that financial institution to use with its banking customers, that software provider is a "financial institution" under the GLBA.

Similarly, Plaintiff's efforts to transform the word "institution" into a load-bearing element of the statute are misplaced. The GLBA defines "financial institution" as "*any institution* the business of which is engaging in financial

activities." 15 U.S.C. § 6809(3)(A) (emphasis added). According to Plaintiff, a court must first conclude that an entity is an "institution" according to the plain meaning of that term before considering whether it engages in "financial activities," and that Nuance cannot pass the first step because it is not an "institution." Op. Br. 17–18. But Nuance is "an established . . . corporation," so it meets Plaintiff's own definition of "institution." *Id.* at 17 (quoting *N.Y. State Bar Ass'n v. FTC*, 276 F. Supp. 2d 110, 118 (D.D.C. 2003) (providing definitions from three dictionaries)). In addition, reading the context, Congress plainly intended for the statutory definition of "financial institution" to focus on the substance of an entity's activities, rather than the character or status of the entity. That is why the GLBA refers capaciously to "*any* institution," and then clarifies its scope in terms of the "financial activities" in which a particular institution engages. 15 U.S.C. § 6809(3)(A) (emphasis added); *e.g.*, *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972) (recognizing that "any" is a "broad," "inclusive" term).

While not dispositive, Federal Trade Commission guidance on this point is instructive. In guidance issued three years after the passage of the GLBA and still operative today, the FTC advised businesses that, under its regulations implementing the GLBA, "*[y]our activities* determine whether you are a 'financial

institution.'"[12] As an Executive Branch interpretation that reflects "the longstanding practice of the government," the FTC's position should "inform [the Court's] determination of what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386, 394 (2024) (internal marks and citations omitted).

*Second*, Plaintiff argues that, even if Nuance meets the statutory definition of "financial institution" when it engages in "financial activities," this Court should hold that Nuance is *not* a financial institution because she says there are no other indicia that Congress intended that the GLBA apply to authentication software providers. Op. Br. 18. But the only case Plaintiff cites for this proposition, *American Bar Ass'n v. FTC*, 430 F.3d 457 (D.C. Cir. 2005),[13] is from the wholly distinct context of an FTC interpretation under which the GLBA could be used to regulate attorneys engaged in the practice of law. *Id.* at 467, 472–73 (citing 12 C.F.R. § 225.28(b)(2)(viii), (b)(6)(vi) (2001)). The FTC's stated position was that lawyers are GLBA financial institutions because § 1843(k) defines financial activities to include those listed in Regulation Y, which in turn includes "[p]roviding real estate settlement services" and "tax-planning and tax-preparation services." *Id.* at 472; 12 C.F.R. § 225.28(b)(2)(viii), (b)(6)(vi) (2001). The D.C. Circuit disagreed, refusing to accord the FTC's interpretation

---

[12] *How to Comply with the Privacy of Consumer Financial Information Rule of the Gramm-Leach-Bliley Act*, Fed. Trade Comm'n (July 2002), https://www.ftc.gov/system/files/documents/plain-language/bus67-how-comply-privacy-consumer-financial-information-rule-gramm-leach-bliley-act.pdf (emphasis added). The FTC also provided in its guidance examples of "financial activities" that it took directly from § 1843(k). *See id.* at 2.

[13] Plaintiff discusses both the appellate and district court decisions in this case. *See* Op. Br. 17–21, 26, 28–29 (citing *N.Y. State Bar Ass'n v. FTC*, 276 F. Supp. 2d 110 (D.D.C. 2003)).

*Chevron* deference: Section 1843(k), the court explained, does not "plainly grant [the FTC] the authority to regulate attorneys engaged in the practice of law"; "[a]n attorney . . . does not fit very neatly into the niche of a 'financial institution,'" given that the "business" of an attorney is the practice of law not financial activity; and "states have regulated the practice of law throughout the history of the country; the federal government has not." *Am. Bar Ass'n*, 430 F.3d at 467–72.

But here, agency deference is irrelevant, there is no oddity of treating a person as an institution, there are no concerns about federal encroachment on an area of longstanding state regulation, and thus there is no need for an "unmistakably clear" statement by Congress. *Id.* at 471–72 (citation omitted). Instead, the Court can start and end its analysis with the GLBA, § 1843(k), and the Federal Reserve's relevant order. The best indicator of Congress's intent is what it actually said in 15 U.S.C. § 6809(3)(A): that "financial institution[s]" include entities that "engag[e] in financial activities as described in [12 U.S.C. §] 1843(k)," including activities deemed by the Board to be closely related to and a proper incident to banking.

This does not make § 6809(3)(A) limitless. Section 1843(k) contains an enumerated list of activities that are financial in nature, which includes some, but certainly not all, services that a vendor provides to a financial institution. In addition, Congress expressly excluded some entities and activities from the GLBA's scope; those exclusions are factually irrelevant here but reflect that when Congress intended to carve out entities and activities from GLBA's scope, it did so explicitly. *E.g.*, 15 U.S.C. § 6809(3)(B)–(D) (listing categories that do not qualify as "financial

institutions" even if they otherwise meet the statutory definition, including persons or entities "subject to the jurisdiction of the Commodity Futures Trading Commission," the "Federal Agricultural Mortgage Corporation," and entities "chartered and operating under the Farm Credit Act of 1971").

*Finally*, Plaintiff argues that Nuance's interpretation of the law would lead to "absurd" results. Op. Br. 26. According to Plaintiff, defining a GLBA financial institution by reference to the examples of "financial activities" in § 1843(k) commits those financial institutions to the substantive requirements outlined in § 1843 and its implementing regulations. *See* Op. Br. 25–27. But the regulation Plaintiff cites, 12 C.F.R. § 225.86, does not reference GLBA "financial institutions" at all; it instead applies to "financial *holding compan[ies]*" within the meaning of the Bank Holding Company Act, 12 U.S.C. § 1843 (emphasis added), which is a distinct type of entity.

For these reasons, the district court properly dismissed Plaintiff's BIPA claims against Nuance. Nuance is exempt from BIPA's regulations when it is alleged to provide authentication services to a bank, as Plaintiff alleges here.

### C. The GLBA Exemption Is Not an Affirmative Defense, and in Any Event, the Amended Complaint Confirms Its Applicability.

Plaintiff also argues the district court's analysis of the GLBA exemption was premature because, she says, the exemption is an affirmative defense that cannot be resolved on a motion to dismiss. Op. Br. 13.

Plaintiff waived this argument. She did not raise it in her opposition to Nuance's motion to dismiss, which nowhere even mentioned the phrase "affirmative defense." SA116–31. *See RCBA Nutraceuticals, LLC v. ProAmpac Holdings, Inc.,* 108

F.4th 997, 1005 (7th Cir.), *reh'g denied,* No. 23-3171, 2024 WL 3970734 (7th Cir. Aug. 28, 2024) (plaintiff's arguments waived where not included in its response to motion to dismiss and only later raised in its motion to reconsider). Instead, in that opposition, Plaintiff argued on the merits that the GLBA exemption did not apply, thereby implicitly agreeing it was appropriate for the district court to interpret Section 25(c). SA121–22. Nor did she argue that the GLBA exemption is an affirmative defense in response to Nuance's motion for leave to file *McGoveran* as supplemental authority—or at any other point before the district court. The district court expressly gave her time to respond to the *McGoveran* case, and Plaintiff failed to do so.

In short, Plaintiff's total failure to challenge the appropriateness of adjudicating the GLBA exemption on a motion to dismiss bars the Court from ruling on her abandoned theory now.[14] *Kratville*, 90 F.3d at 198; *Lekas v. Briley,* 405 F.3d 602, 614–15 (7th Cir. 2005) ("Our system of justice is adversarial and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." (citation omitted)); *see also Arobelidze v. Holder*, 653 F.3d 513, 517 (7th Cir. 2011) ("non-jurisdictional" arguments are "subject to waiver, forfeiture, and other discretionary considerations").

---

[14] Plus, for the reasons that follow, even if the Court deems Plaintiff's argument forfeited instead of waived, the district court's dismissal of the amended complaint on Section 25(c) grounds was not plain error.

Regardless, Plaintiff's argument is incorrect. Section 25(c) is a statutory exemption, which Illinois courts do not treat as an affirmative defense unless expressly labeled as one.[15] *See People v. Finkenbinder*, 2011 IL App (2d) 100901, ¶ 10. For example, in *People v. Foster,* 195 Ill. App. 3d 926 (5th Dist. 1990), where the statutory provision in question was neither an element of the offense nor labeled as an affirmative defense, the Illinois appellate court held it was properly characterized as an exemption. *Id.* at 953 ("Had the legislature intended to treat these exemptions as affirmative defenses, it would have labeled them as such." (citations omitted)).

Here, Section 25(c) does not say "it shall be a defense that the defendant is a financial institution." *Compare* 805 ILCS 5/7.75(d) (using "[i]t shall be a defense" language in context of a shareholder action); *with* 740 ILCS 14/25(c). Rather, recognizing that the GLBA occupies the space of regulating financial institutions and related activities, Section 25(c) functions to limit the breadth of BIPA's regulation. This is reinforced by the exemption's placement in a section entitled, "Construction," a label that makes clear the Illinois General Assembly's intent that BIPA's regulatory ambit and private cause of action be construed in conjunction with Section 25's exemptions.

Indeed, no other reading would be logical given the parallel state and federal regulatory regimes. BIPA sweeps broadly to capture a wide array of conduct. But in

---

[15] Because the question before this Court "involves the interpretation of an Illinois statute," it should apply "Illinois's rules of statutory construction." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1089 (7th Cir.), *certified question answered*, 2016 IL 120526; *see also In re Hernandez*, 918 F.3d 563, 569 (7th Cir. 2019) ("We apply Illinois's rules of statutory construction when interpreting an Illinois statute.").

the context of financial institutions, BIPA must yield to the comprehensive federal regulation in the GLBA. Section 25(c) achieves exactly that: It functions to limit BIPA's broad regulation so as to avoid potential conflict.

Against this backdrop, it is no surprise that Plaintiff cites no precedential decision, from any state or federal court, holding that the GLBA exemption is an affirmative defense or that it is improper to dismiss a financial institution on the pleadings. Beyond citing three unreasoned district court decisions, Plaintiff has made no argument as to why the GLBA exemption is an affirmative defense.[16] And for the reasons discussed above, this Court should hold otherwise.

In any event, the district court's ruling on the GLBA exemption required no factual development, *contra* Op. Br. 13–14, because Plaintiff's own allegations satisfy any such affirmative defense. The district court properly dismissed based on the exemption regardless of whether it is classified as an affirmative defense.

While a complaint ordinarily does not need to anticipate an affirmative defense, dismissal is still required where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis,*

---

[16] None of the district court cases cited by Plaintiff provide a reasoned decision on the issue of whether Section 25(c) is an affirmative defense. In *Deyerler v. HireVue, Inc.*, No. 22 CV 1284, 2024 WL 774833 (N.D. Ill. Feb. 26, 2024), the court noted that "[c]ourts in [the Northern District of Illinois] have commented that the financial institution exemption is akin to an affirmative defense," but did not itself analyze the issue. *Id.* at *5. In *Davis v. Jumio Corp.*, No. 22-cv-00776, 2023 WL 2019048 (N.D. Ill. Feb. 14, 2023), the parties did not contest—and so the court assumed but did not decide—that the GLBA exemption is an affirmative defense. *Id.* at *2. And in *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783 (N.D. Ill. 2022), the court "note[d]" only in a footnote "the possibility that section 25(c) provides an *affirmative* defense." *Id.* at 819 n.18.

411 F.3d 838, 842 (7th Cir. 2005). Here, Plaintiff's allegations foreclose her BIPA claims by establishing that Nuance is a financial institution. As discussed above, Plaintiff has alleged that Nuance is a private corporation that "touts itself as 'the Leader' in the biometric authentication space." SA76 ¶ 6. Plaintiff has alleged that Nuance provides voice-authentication software to Schwab. SA81, 85, 93 ¶¶ 33, 60, 99. And Plaintiff has alleged that Schwab uses Nuance software to authenticate its customers when the customer calls Schwab. SA81–82 ¶¶ 33–36; *see also* SA82 nn. 9–11 (incorporating Schwab's website). Those allegations, taken as true, suffice to establish on their face that Nuance is an institution that engages in financial activities by providing authentication software to Schwab.

This case is thus distinct from Plaintiff's lower court decisions. In each of those cases, the court found the applicability of the GLBA exemption to turn on facts outside the pleadings or record. *Deyerler v. HireVue, Inc.*, No. 22 CV 1284, 2024 WL 774833, at *5 (N.D. Ill. Feb. 26, 2024) (defendant relied on "fact-specific assertion that [its] contracts with health insurance companies . . . entitle[d] it to the financial institution exemption," where complaint did not include allegations about health-insurance contracts); *Davis v. Jumio Corp.*, No. 22-cv-00776, 2023 WL 2019048, at *3 (N.D. Ill. Feb. 14, 2023) (complaint contained no allegations about contents of defendant's activities as a "cryptocurrency marketplace"); *Patterson v. Respondus, Inc.,* 593 F. Supp. 3d 783, 819 n.18 (N.D. Ill. 2022) (defendant's brief "relie[d] heavily on non-record facts, suggesting that section 25(c) provides an affirmative defense not fit for resolution at this stage"). By contrast, Plaintiff's allegations on their face plead

her out of a BIPA claim against Nuance. Therefore, even if Section 25(c) creates an affirmative defense (and it does not), dismissal was proper.

## II. The Court Should Affirm Dismissal on the Alternative and Additional Ground that Plaintiff's Theory Impermissibly Seeks to Impose BIPA's Privacy Regulations on Schwab.

In the alternative, this Court should affirm the district court's dismissal of Plaintiff's claims because the amended complaint impermissibly seeks to apply BIPA's privacy regulations to Schwab's conduct, including to Schwab's interactions with its customers, through Nuance. *See Oneida Nation v. Village of Hobart*, 968 F.3d 664, 686 (7th Cir. 2020) (the Court "may affirm the district court judgment 'on any ground supported in the record, so long as that ground was adequately addressed in the district court and the nonmoving party had an opportunity to contest the issue'" (citation omitted)). Here, even if Nuance were not itself a financial institution, Schwab indisputably is one.[17] *See* SA120–21; SA161 n.2 (district court taking judicial notice of fact that Schwab is a financial institution). And Plaintiff forthrightly acknowledges that Nuance's compliance with BIPA would depend on Schwab also being required to comply with BIPA's terms—a result foreclosed by the statute.

Section 25(c) broadly bars any action or claim seeking to apply BIPA "in any manner" to a GLBA financial institution or affiliate. 740 ILCS 14/25(c). Phrases like "in any manner" impose broad mandates. *See, e.g.*, *Ryan v. Bd. of Trs. of Gen. Assembly Ret. Sys.*, 236 Ill. 2d 315, 320 (2010) (discussing phrases like "none of the

---

[17] Schwab is an institution that engages in financial activities, including "[l]ending, exchanging, transferring, investing for others, or safeguarding money or securities." 12 U.S.C. § 1843(k)(4); *see also* 15 U.S.C. § 6809(3)(A).

benefits" and "any felony" (emphasis omitted)); *Deravin v. Kerik*, 335 F.3d 195, 203–04 (2d Cir. 2003) ("The words 'participate in any manner' express Congress' intent to confer exceptionally broad protection upon employees covered by Title VII." (some internal quotation marks and citations omitted)). Interpreting the comparable statutory phrase "in any way," this Court has found that it reflects the legislature's "intent to exercise its *full power*" to regulate the targeted conduct. *United States v. Lewis*, 797 F.2d 358, 366–67 (7th Cir. 1986) (emphasis added).

Here, the phrase as used in the GLBA exemption is emphatically expansive. The Illinois General Assembly did not simply say that BIPA "does not apply" to financial institutions, or that it does not apply when there would be a conflict with the GLBA, as it did in the context of BIPA's other exemptions. *See* 740 ILCS 14/25(b), (d); *People v. Fredericks*, 2014 IL App (1st) 122122, ¶ 23 ("When the legislature uses certain language in one part of a statute and different language in another, we may assume different meanings were intended." (citation omitted)). Had the General Assembly used one of these formulations, it might be reasonable to construe the exemption to mean only that GLBA financial institutions may not be *directly* required to comply with BIPA, such as via injunctive relief against the financial institution as a defendant in a BIPA suit.

But the exemption *must* mean more than that, in order for the "in any manner" phrase to be "given a reasonable meaning" and "not be rendered superfluous." *People v. Casler*, 2020 IL 125117, ¶ 24. It thus stands to reason that the General Assembly intended that financial institutions not be *indirectly* required to comply, either. *Cf.*

*Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1353 (11th Cir. 1999) (where statute protected employees who "participate in any manner" in an EEOC investigation, "indirect" participation counted (citation omitted)); *accord Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 175 (2d Cir. 2005).

Plaintiff's BIPA claims against Nuance run afoul of Section 25(c)'s broad, unambiguous exemption. Plaintiff expressly premised her claims against Nuance on alleged omissions by Schwab, including that "Nuance does not require its clients [including Schwab] to acknowledge that Nuance is capturing and storing . . . sensitive biometric information when a user uses one of Nuance's products on [Schwab]'s website," SA88 ¶ 76, and Nuance does not require Schwab to "link to the Nuance privacy statement such that any disclosures made there are known to [Schwab]'s customers," *id.* ¶ 77. Schwab instead allegedly interacted with its customers without making BIPA disclosures advising its customers of Nuance's alleged role. *Id.* ¶¶ 76–77.

The indirect impact of Plaintiff's interpretation on Schwab is perhaps best illustrated by Plaintiff's requested relief. Her prayer for relief includes "injunctive and other equitable relief . . . including an Order requiring [Nuance] to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA." SA96. Elsewhere, her complaint fills in what such an Order would indirectly require Schwab to do: Plaintiff says that Nuance must "require its clients [including Schwab] to acknowledge that Nuance is capturing and storing this sensitive biometric information when a user uses one of Nuance's products on the

38

client's website" and must "require[]" its customers—that is, Schwab—"to link to the Nuance privacy statement such that any disclosures made there are known to [Schwab]'s customers." SA88 ¶¶ 76–77.

In other words, if the district court were to issue Plaintiff's requested injunction requiring Nuance to comply with BIPA as understood by Plaintiff, its order would ultimately govern *Schwab's* conduct. But the GLBA exemption says that "[n]othing in [BIPA]," including its substantive requirements, can "apply . . . to a financial institution" like Schwab. 740 ILCS 14/25(c). This exemption not only excuses Schwab from being named as a defendant in this action, it exempts Schwab and other financial institutions from being made subject to BIPA's limitations, requirements, and prohibitions *in any manner*.

It is no answer to interpret BIPA to apply to Nuance but excuse Schwab from compliance, given that, as discussed above, Nuance and Schwab allegedly handle the very same alleged biometric data in the context of the very same customer interaction. Given that interrelationship, the inescapable conclusion is that Nuance should be exempt from BIPA, like Schwab; but if it is not and BIPA applies, the result is that BIPA also impermissibly regulates Schwab's conduct.

**CONCLUSION**

For the reasons stated above, Nuance respectfully requests that this Court affirm the judgment of the district court.

Dated: July 7, 2025

Respectfully submitted,

NUANCE COMMUNICATIONS, INC.

By: /s/ Andrianna D. Kastanek
    *One of Its Attorneys*

Lindsay C. Harrison
Sophia W. Montgomery
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
(202) 639-6000
lharrison@jenner.com
smontgomery@jenner.com

Andrianna D. Kastanek
David C. Layden
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
akastanek@jenner.com
dlayden@jenner.com

*Attorneys for Defendant-Appellee*

**CERTIFICATE OF COMPLIANCE WITH FED R. APP. P. 32(a)(7)**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) because, according to the word count function of Microsoft Office Word 365, this brief contains 10,516 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in 12-point Century Schoolbook font for the main text and for footnotes.

Dated: July 7, 2025

/s/ Andrianna D. Kastanek
Andrianna D. Kastanek

**CERTIFICATE OF SERVICE**

I, Andrianna D. Kastanek, an attorney, hereby certify that on July 7, 2025, I caused the **Brief of Defendant-Appellee Nuance Communications, Inc.** to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Brandon M. Wise
Domenica M. Russo
PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
(314) 833-4825
bwise@peifferwolf.com
drusso@peifferwolf.com

Mason Barney
Sonjay Singh
SIRI & GLIMSTAD LLP
200 Park Avenue, 17th Floor
New York, NY 10166
(212) 532-1091
mbarney@sirillp.com
ssingh@sirillp.com

Pursuant to ECF procedure (h)(2) and Circuit Rule 31(b), and upon notice of this Court's acceptance of the electronic brief for filing, I certify that I will cause fifteen (15) copies of the above named brief to be transmitted to the Court via UPS overnight delivery, delivery charge prepaid, within five days of that date.

/s/ Andrianna D. Kastanek
Andrianna D. Kastanek